Scoeield. J.,
delivered the opinion of the court:
The claims in these two cases are antagonistical to each other. They were therefore, by agreement of parties and consent of the court, consolidated and tried together.
In 1864 the direct-tax commissioners of the United States for the State of Tennessee sold lot Ho. 118, in the city of Memphis, for direct taxes. It was struck down to Reuel Hough at $255, to whom the commissioners, upon the payment of the purchase money, issued certificate Ho. 1076. The taxes, penalty, costs, and interest amounted to $13.89, leaving a balance in tl^e Treasury of $241.11.
Hough, it appears, purchased a large number of lots, and in so doing represented several parties interested with himself.
*352 In á partition suit in the chancery court of Shelby County, Term., to which said Hough and the others interested with him in the purchases were parties, certificate Ho. 1076 was decreed to belong to the estate of Claiborne lie Loach, then deceased.
Imogene A. Beaumont, administratrix of said De Loach, joined with Thomas A. De Loach, the alleged heir of Claiborne De Loach, are the claimants in Ho. 16680, for the return of the purchase-money, alleging that the title supposed to have been acquired has entirely failed.
Boyd & Walt are claimants for the surplus purchase-money in case Ho. 14367, under the Act of March 3, 1883 (22 Stat., 595), which is as follows :
“ The Secretary of the Treasury is hereby authorized and directed to cause to be audited by the proper accounting officers of the Treasury and paid the claims of the original owners of lands which were sold for non-payment of the United States direct taxes, for the surplus proceeds of the same under the provisions of August 5, 1861 (12 Stat., 305), and for such purpose the sum of $190,000 or so much thereof as may be necessary is hereby appropriated.”
They were the owners of the land at the time of sale, but have always resisted the tax title and steadily maintained their possession of the lot. June 2,1865, they instituted a suit in the chancery court of Shelby County for the purpose of establishing and quieting their title, and made said Hough and the heirs and legal representatives of said Claiborne De Loach parties thereto. July 8,1874, a final decree was entered in the suit decreeing the tax “ certificate canceled and for naught held,” and “the title a,nd possession of said Boyd & Walt be quieted and the injunction be held perpetual.”
In an ejectment suit brought in the second circuit court of Shelby County by parties claiming under this certificate judgment was i endered April 23,1875, in favor of the parties claiming under Boyd & Walt.
It is now nearly thirty years since the lot was sold, yet Boyd & Walt, during all this time, have not only retained the possession of it, but have twice vindicated their right so to do in the courts of Tennessee.
We know of no rule of law by which they can be permitted to hold both the land and the purchase-money. (Rhett's Case, 20 C. Cls., 338; Wilson’s Case, 24 id., 237.)
*353 The claimants in No. 166S0 present a much more meritorious case. They paid the purchase-money to the Government, and have since been to much trouble and expense in unsuccessful efforts to obtain possession of the land. They have, however, no legal claim against the defendants unless it has been conferred by statute.
The Act of June 7,1862 (12 Stat., 422), providing for the collection of direct taxes, did not warrant title to the purchaser (Cooper v. The United States, 120 U. S., 126), nor did it make any provision for a refund of the purchase-money on failure of title except in cases of redemption. This omission was supplied by the Act of June 8, 1872 (17 Stat., 332), which is as follows:
“ Seo. 9. That section 2 of an act entitled ‘An act for the relief of purchasers of land sold for direct taxes in the insur-rectionary States,’ approved May 9, 1872, be, and the same is hereby, amended to read as follows:
“ ‘ Seo. 2. That in all cases where the owner of any land sold for taxes as aforesaid, his heirs or assigns, has recovered or shall recover the same irom the purchaser, his heirs or assigns, without collusion on his or their part, by the judgment of any United States court, by reason of a failure, without his or their fault or neglect, of the title of the purchaser derived from said sale, the. Secretary of the Treasury, on the payment into the Treasury, by the clerk, of the money deposited with him as aforesaid, and on being satisfied that any purchaser, his heirs or assigns, without his or their collusion, has been evicted from or turned out of possession of any such land by the judgment of any United States court, in the manner before mentioned, is hereby authorized, out of any money in the Treasury not otherwise appropriated, to repay to the person or persons entitled thereto a sum of money equal to that originally paid by the purchaser of the land so recovered, if the same has been paid into the Treasury or to any person legally authorized to receive .the same for the United States.’ ”
By the terms of this act the failure of title must be established “by the judgment of some United States court” as a condition precedent to the repayment of purchase-money. The claimants concede that they are not entitled to recover under this act, because there has been no eviction by the judgment of any United States court; but they contend that this condition precedent to repayment has been repealed by sections 3689 ami 5596 of the Kevised Statutes.
Section 3689 relates entirely to permanent appropriations and enumerates some fifty class claims, under the following heading:
*354 “ Seo. 3689. There are appropriated, oat of any moneys in the Treasury not otherwise appropriated, for the purposes hereinafter specified, such sums as may be necessary for the same respectively; and such appropriations shall be deemed annual appropriations.”
In this list is the following:
u Payment for land sold for direct taxes_To repay to purchasers evicted through failure of title from lands sold to them in insurrectionary districts for direct taxes.”
The part of section 5596 relied upon as repealing ninth section of the act of 1872 is as follows:
“ Sec. 5596. All acts of Congress passed prior to the 1st day of December, 1873, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof.”
Is any portion of section 9 of the act of 1872 embraced in the foregoing extract of section 3689 ? We do not so understand it. The act of 1872 creates a right and defines the evidence by which it may be established, while section 3689 provides the means of payment. The one allows a claim, the other makes an appropriation to meet it. In order to define the class of claims for which the permanent appropriation was intended some descriptive words were necessarily used. It was for this purpose that the same descriptive words found in the act of 1872 were repeated in the appropriation act in this revision. All the precautions against collusion and fraud prescribed in the act of 1872 remain unaffected.
Even if the claimants’ construction of the law were correct, it is not certain they could recover in this case, for under that construction the fact of eviction must still be proved in this court by competent evidence, and it is well settled that a decision adverse to a title in a suit to which the warrantor was not a party and of which he had no notice will not conclude him in a suit on the warranty. It does not appear that the defendants had any notice of the litigation in Tennessee. Certainly they were not a party to it.
The petitions in both cases will be dismissed.